Approved: _____
CHRISTOPHER D. BRUMWELL
Assistant United States Attorney

Before:  HONORABLE LISA MARGARET SMITH
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - v. -

ALBERT SMITH, a/k/a "Thirst,"

                    Defendant.

- - - - - - - - - - - - - - - - X

SEALED COMPLAINT   19 mag 5723

Violations of
21 U.S.C. §§ 841(a)(1),
841(b)(1)(B), and 846

COUNTY OF OFFENSE:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

MARK VERE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

COUNT ONE

1. From at least in or about the late 2016 up to and including at least in or about 2017, ALBERT SMITH, a/k/a "Thirst," the defendant, intentionally and knowingly did combine, conspire, confederate, and agree with others, to violate the narcotics laws of the United States.

2. It was a part and object of the conspiracy that ALBERT SMITH, a/k/a "Thirst," the defendant, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance involved in the offense was mixtures and substances containing 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846)

## COUNT TWO

4. On or about February 1, 2019, in the Southern District of New York, ALBERT SMITH, a/k/a "Thirst," the defendant, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance.

5. The controlled substance that ALBERT SMITH, a/k/a "Thirst," the defendant, distributed and possessed with intent to distribute contained a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C).)

## COUNT THREE

6. On or about February 7, 2019, in the Southern District of New York, ALBERT SMITH, a/k/a "Thirst," the defendant, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance.

7. The controlled substance that ALBERT SMITH, a/k/a "Thirst," the defendant, distributed and possessed with intent to distribute contained a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C).)

## COUNT FOUR

8. On or about February 19, 2019, in the Southern District of New York, ALBERT SMITH, a/k/a "Thirst," the defendant, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance.

9. The controlled substance that ALBERT SMITH, a/k/a "Thirst," the defendant, distributed and possessed with intent to distribute contained a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

10. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, including my review of pertinent documents and recordings, my participation in surveillance, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11. In the course of this investigation, I and other members of law enforcement have spoken with a cooperating witness ("CW").[1] CW was arrested in 2018, and based on my conversations with members of law enforcement who were present

---

[1] Pursuant to a cooperation agreement with the Government, CW has pleaded guilty to conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin and more than four hundred grams of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. CW has not yet been sentenced for these charges. CW also has prior convictions for attempted criminal possession of a controlled substance in the third degree, in violation of New York State Penal Law Section 220.16(01); and possession with intent to deliver narcotics, in violation of Pennsylvania Statutes Title 35 P.S. Health and Safety Section 780-113, and participation in a corrupt organization in violation of Pennsylvania Criminal Statutes Title 18 Section 911.

Under the terms of CW's cooperation agreement, CW is required to provide truthful information to our office, among other things, and the Government has agreed to inform CW's sentencing judge about CW's cooperation. Additionally, if the Government determines CW has provided substantial assistance in an investigation or prosecution, and that CW has fully complied with the understandings specified in CW's cooperation agreement, the Government will file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. §3553(e), requesting the Court to sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5). The information CW has provided has proven reliable and has been corroborated.

3

during that arrest, I know that CW was arrested while attempting to flush over one kilogram of heroin down a toilet. Following his arrest, CW met with law enforcement and admitted, among other things, that he sold heroin to several individuals in the vicinity of the Bronx, New York.

12. In the course of my conversations with CW, CW identified a photograph from law enforcement records of ALBERT SMITH, a/k/a "Thirst," the defendant, as an individual CW knew as "El Gato Mala Paga." CW also told me the following:

   a. CW was introduced to SMITH by an acquaintance who told CW that SMITH wanted to purchase heroin;

   b. CW sold SMITH approximately twenty to thirty grams of heroin on each of two or three separate occasions within weeks of his first introduction to SMITH;

   c. After these initial two or three purchases, CW met with SMITH approximately five or six more times and CW sold SMITH approximately fifty grams of heroin each time;

   d. CW sometimes sold SMITH heroin on consignment, and the price was approximately $65 per gram;

   e. CW stopped dealing heroin to SMITH because he did not pay him in full for one of the deals in which CW sold SMITH approximately 50 grams of heroin.

13. After CW and other investigative techniques identified ALBERT SMITH, a/k/a "Thirst," the defendant, as a heroin dealer, I and other members of law enforcement conducted three controlled purchases of heroin from him using a confidential informant (the "CI").[2] These controlled purchases took place in Yonkers, New York. Prior to each of these purchases, the CI was searched for contraband by a member of law

---

[2] The CI has been working as an informant for the Yonkers Police Department, the Federal Bureau of Investigation, and the Drug Enforcement Agency for several years. The CI has a prior conviction for unlawful possession of marijuana, in violation of NYPL § 221.05, which took place over ten years ago, and two prior felony convictions related to narcotics distribution, which took place over fifteen years ago. The CI is currently a paid confidential informant, and has been paid for the controlled purchases described herein. The information he has provided has been proven reliable and has been corroborated.

4

enforcement, and no contraband was found.

### February 1, 2019 Controlled Purchase

14. On or about February 1, 2019, I and other members of law enforcement met with the CI to conduct a controlled purchase of heroin from ALBERT SMITH, a/k/a "Thirst," the defendant. Prior to the controlled purchase, another member of law enforcement searched CI and found no contraband. Subsequently, I and other members of law enforcement gave the CI $750 to purchase a quantity of heroin, and observed the CI call a phone number (the "Buy Phone") to arrange a narcotics transaction with SMITH.

15. After the CI arranged the transaction, I and other members of law enforcement observed the CI as he completed the buy from ALBERT SMITH, a/k/a "Thirst," the defendant. I spoke to another member of law enforcement who participated in surveillance of this controlled buy ("Detective-1"), and learned the following:

   a. Detective-1 observed the CI travel to an apartment building in Yonkers (the "Buy Location"), and enter the main lobby at approximately 2:28 P.M.;

   b. Detective-1, who is familiar with SMITH's appearance from photographs maintained in law enforcement records, observed SMITH enter the Buy Location at approximately 2:31 P.M.;

   c. Detective-1 observed the CI leave the Buy Location at approximately 2:36 P.M.

16. After the CI left the buy location, the CI met with officers from the FBI and handed them several receptacles, which held a beige substance. Hours later, the CI returned to the Buy Location to obtain an additional quantity of heroin he had arranged to buy from ALBERT SMITH, a/k/a "Thirst," the defendant. I spoke to Detective-1, who informed me that he conducted surveillance of the CI at the Buy Location, and informed me that he observed the following:

   a. SMITH entered the lobby of the Buy Location at approximately 6:28 PM;

   b. The CI entered the Buy Location at approximately 6:29 PM;

   c. The CI exited the Buy Location at approximately 6:35 PM.

17. After the CI left the Buy location, he met with me and another member of law enforcement, provided us with receptacles containing a powdery substance that, based on my training and experience, appeared to be heroin, and indicated that he had purchased them from ALBERT SMITH, a/k/a "Thirst," the defendant. Based on my review of a report prepared by the Yonkers Police Department Forensic Science Laboratory concerning the contents of the receptacles that the CI provided to law enforcement on or about February 1, 2019, I know that the substances acquired were subject to forensic analysis and tested positive for the presence of heroin.

### February 7, 2019 Controlled Purchase

18. On or about February 7, 2019, I and other members of law enforcement met with the CI to conduct a controlled purchase of heroin from ALBERT SMITH, a/k/a "Thirst," the defendant. Prior to the controlled purchase, another member of law enforcement searched the CI and found no contraband. At approximately 5:10 PM, I observed the CI contact the Buy Phone to arrange a heroin purchase from SMITH, and heard a male voice tell the CI to call him again in an hour. At approximately 6:55 PM, I observed the CI contact the Buy Phone again, and heard a male voice on the line direct the CI to come to "the building." Subsequently, I and other members of law enforcement gave the CI $550 to purchase heroin from SMITH, activated a recording device, and provided it to the CI. I and other members of law enforcement then conducted surveillance of the CI as he completed the buy.

19. I spoke to other members of law enforcement conducting surveillance of the CI during the buy ("Detective-2" and "Detective-3"), who are familiar with the appearance of ALBERT SMITH, a/k/a "Thirst," the defendant, based on their participation in this investigation, and:

   a. Detective-2 informed me that he observed the CI enter the Buy Location at approximately 7:11 PM;

   b. Detective-3 informed me that he observed SMITH pull up in front of the Buy Location in a Black Mercedes with license plate number GVG2115 at approximately 7:15 PM;

   c. Detective-3 informed me that he observed SMITH and

the CI meet outside the Buy Location at approximately 7:29 PM, and observed the CI leave the area afterwards.

20.  Subsequently, at approximately 7:34 PM, the CI met with me and another member of law enforcement.  He provided me with receptacles containing a powdery substance that, based on my training and experience, appeared to be heroin, and stated that he had just purchased them from ALBERT SMITH, a/k/a "Thirst," the defendant.

21.  Based on my review of a report prepared by the Yonkers Police Department Forensic Science Laboratory concerning the contents of the receptacles that the CI provided to law enforcement on or about February 7, 2019, I know that these substances were subject to forensic analysis and tested positive for the presence of heroin.

22.  After the buy, I spoke to a member of the Yonkers Police Department, who informed me that according to records maintained by the New York Department of Motor Vehicles, the Black Mercedes observed by Detective-3 during the buy is registered to ALBERT SMITH, a/k/a "Thirst," the defendant.

### February 19, 2019 Controlled Purchase

23.  On or about February 19, 2019, I and other members of law enforcement met with the CI to conduct a controlled purchase of heroin from ALBERT SMITH, a/k/a "Thirst," the defendant.  Prior to the controlled purchase, another member of law enforcement searched the CI and found no contraband. Subsequently, I and other members of law enforcement gave the CI $550 to purchase heroin and conducted surveillance of the CI as he completed the buy.

24.  I spoke to another member of law enforcement who conducted surveillance of the CI during this controlled buy ("Detective-4"), who is familiar with the appearance of ALBERT SMITH, a/k/a "Thirst," the defendant, based on his participation in this investigation and Detective-4 informed me that he observed the following:

   a. The CI and SMITH entered the Buy Location at approximately 6:18 PM;

   b. The CI and SMITH left the Buy Location at approximately 6:18 PM and walked in opposite directions.

7

25. Subsequently, the CI met with me and another member of law enforcement. He provided me with several receptacles containing a powdery substance that, based on my training and experience, appeared to be heroin, and indicated that he had just purchased them from ALBERT SMITH, a/k/a "Thirst," the defendant. Based on my review of a report prepared by the Yonkers Police Department Forensic Science Laboratory concerning the contents of the receptacles that the CI provided to law enforcement on or about February 19, 2019, I know that these substances were subject to forensic analysis and tested positive for the presence of heroin.

26. Based on my participation in this investigation, I believe that the narcotics CW was distributing with ALBERT SMITH, a/k/a "Thirst," the defendant, was heroin, for the following reasons, among others: CW pleaded guilty to distributing more than one kilogram of heroin; CW informed me that he sold heroin to SMITH; and the substances purchased from SMITH between February 1, 2019 and February 19, 2019 tested positive for the presence of heroin.

WHEREFORE, the deponent respectfully requests that ALBERT SMITH, a/k/a "Thirst," the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
MARK VERE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
17 day of June, 2019

_____
HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK